DIAZ, J.,
for the Court:
¶ 1. Michael Jamison appeals the decision of the Attala County Circuit Court convicting him of the crime of sale of a Schedule II controlled substance, cocaine, and as a habitual offender. Jamison’s attorney raises the following issues in this appeal: (1) whether the trial court erred in *361 forcing him to choose between his constitutional right to confront a witness against him and his constitutional and statutory-rights to a speedy trial and (2) whether the trial court erred in admitting evidence regarding drug enforcement operations not involving him. Jamison filed a separate, hand-written brief raising the claim of mistaken identity. Nevertheless, we find no error and accordingly affirm the trial court.
FACTS
¶ 2. On March 11, 1998, Michael Jamison a/k/a “Hop Sing” a/k/a Michael Hughes was found guilty by a jury hearing the case in the Attala County Circuit Court. Prior to the commencement of this trial, Jamison was told that the case would be set for trial on March 9, 1998. Upon this case being called on for trial on March 9, 1998, the State moved for a continuance due to the absence of a witness. David White, an investigator with the Kosciusko Police Department was called into active duty with the United State Military for a period of 120 days. The court granted the State’s motion for a continuance despite Jamison’s assertion of his right to a speedy trial. Thereafter, Jamison waived his objection to Officer White’s testimony about the chain of custody of the cocaine even though his attorney advised him otherwise. The case proceeded to trial.
¶ 3. Jamison’s primary defense was one of mistaken identity. He claimed that his name was Michael Hughes rather than Michael Jamison. Outside the presence of the jury, Jamison, who claimed to be Michael Hughes admitted that he was also known as both Michael Jamison and Hop-Sing. The trial court took judicial notice of the fact that Jamison had been tried previously as Michael Jamison and had answered to that name in other court proceedings.
¶ 4. Sergeant Phillip Franks of the Kosciusko Police Department stated the reasons why Jamison was not arrested after the alleged cocaine purchase on July 13, 1996. Sergeant Franks explained that the police were involved in a continuing investigation with the same informants as used in Jamison’s case, and therefore, they did not make any arrests until they completed their operations in that area of Kosciusko.
¶ 5. Jamison and his attorney disagreed over evidentiary issues relating to his defense. Notably, it was made clear that Jamison’s primary defense was a “wrong name defense,” and that he was not Michael Jamison' but rather Michael Hughes. Jamison admitted to having been called Michael Jamison in the past and to having been tried for robbery in the past as Michael Jamison. Additionally, Jamison wanted to use race as a defense to attack the character of State witnesses. However, the trial court found these questions irrelevant. Neither Jamison nor his attorney contested the prior felonies in the name of Michael Jamison as being incorrect statements of identity.
¶ 6. Neither Jamison nor his attorney raised any questions about the collection, storage, transportation, or identification of the cocaine which Jamison allegedly sold. An undercover agent identified Jamison, whom he had known for nearly five months prior to the sale, as the person from whom he purchased the cocaine. The undercover agent also identified Jami-son’s image on a video-tape of the sale made on July 13, 1996. Additional evidence was presented that the cocaine sale at the car wash was less than 300 feet from the Wesley Methodist Church.
¶ 7. After a trial on the merits, Jamison was found guilty by the jury of sale of a Schedule II substance, cocaine, as a habitual offender. The trial court sentenced Jamison to serve sixty years in the custody of the Mississippi Department of Corrections with no possibility of parole. Feeling aggrieved, Jamison perfects this appeal.
DISCUSSION
I. WHETHER THE TRIAL COURT ERRED IN FORCING JAMISON TO *362 CHOOSE BETWEEN HIS CONSTITUTIONAL RIGHT TO CONFRONT A WITNESS AGAINST HIM AND HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO A SPEEDY TRIAL
A. Constitutional Right to a Speedy Trial
¶ 8. Jamison argues that he was denied his constitutional right to a speedy trial. The important dates are as follows: Jamison was arrested on November 20, 1996; he was initially indicted and arraigned as Michael Jamison in February 1997 but that indictment was dismissed without prejudice; he was reindicted and arraigned in August 1997 as Michael Jamison a/k/a Michael Hughes a/k/a Hop-Sing; and he was tried and convicted on March 11, 1998.
¶ 9. The constitutional right to a speedy trial, which exists separate from the statutory right, “attaches at the time of the accused’s arrest.... ” Ross v. State, 605 So.2d 17, 21 (Miss.1992) (citation omitted). Once this right has attached this Court will follow the test laid out by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Barker test consists of four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant has been prejudiced by the delay. Id. at 533, 92 S.Ct. 2182.
¶ 10. The time between Jamison’s arrest and trial was 474 days. “[A]ny delay of eight (8) months or longer is presumptively prejudicial.” Smith v. State, 550 So.2d 406, 408 (Miss.1989) (citation omitted). This factor standing alone is insufficient for reversal, but requires a close examination of the remaining factors. Handley v. State, 574 So.2d 671, 676 (Miss.1990).
¶ 11. “The [Sjtate bears the risk of non-persuasion regarding the reasons for delay and must show whether that the defendant caused the delay or that good cause existed for the delay.” Fleming v. State, 604 So.2d 280, 299 (Miss.1992) (citations omitted). Jamison’s first indictment was dismissed without prejudice because it did not include his aliases. He was presented to the next grand jury in August 1997 which was a routine procedure. His case was then set for trial. This delay was in no way a deliberate attempt to harm the defense and therefore, weighs less heavily against the State. State v. Magnusen, 646 So.2d 1275, 1281 (Miss.1994).
¶ 12. Prior to the trial, the State requested a continuance because a material witness was out of state on military duty and could not be present. At this point, the trial court gave Jamison the option of continuing to trial if he chose to waive his chain-of-custody objection. Although his attorney objected, the record indicates that Jamison voluntarily chose to waive his objection to the testimony of this witness in order to proceed to trial on March 11, 1998. Therefore, this factor weighs in favor of the State.
¶ 13. Jamison did not assert his right to a speedy trial until the State requested this continuance on March 9, 1998. Under these circumstances, the assertion of right weighs, at most, only slightly in Jamison’s favor. McGhee v. State, 657 So.2d 799, 803-04 (Miss.1995).
¶ 14. Jamison failed to state any prejudice to him or to his defense in this case. A balance is struck in favor of rejecting a defendant’s speedy trial claim if “the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice.” Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994).
¶ 15. Jamison waited 474 days from the date of his arrest and his trial. At first glance, this time period appears to be prejudicial; however, a Barker analysis reveals that the reason for the lengthy delay was that Jamison was reindicted and that he *363 did not demonstrate any prejudice to himself or his defense by the delay. Furthermore, Jamison did not assert his right to a speedy trial until two days before trial. Therefore, Jamison’s assignment of error that he did not receive his constitutional right to a speedy trial is without merit.
B. Statutory Right to a Speedy Trial
¶ 16. Jamison was arraigned on the second indictment in August 1997. He went to trial on March 11, 1998, which was 213 days after being reindicted.
¶ 17. Our speedy trial statute states “[u]nless good cause is shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.” Miss. Code Ann. § 99-17-1 (Rev.1994). “The statutory 270 day rule is satisfied once the defendant is brought to trial, even if that trial results in a mistrial.” Handley v. State, 574 So.2d 671, 674 (Miss.1990) (citing Kinzey v. State, 498 So.2d 814, 816 (Miss.1986); State v. Thornhill, 251 Miss. 718, 723, 171 So.2d 308, 310 (1965)).
C. Constitutional Right to Confront a Witness
¶ 18. “The right to confront and cross-examine the witnesses against him is one guaranteed to all defendants under the Sixth Amendment of the United States Constitution and Article 3, Section 26 of the Mississippi Constitution.” Shaffer v. State, 740 So.2d 273, 281 (Miss.1998)(em-phasizing language of both constitutions that in all criminal prosecutions, accused shall enjoy right to be confronted with witnesses against him). Jamison asserts that he was required to choose between the right to a speedy trial and the right to confront a witness against him. However, a review of the record indicates otherwise. The following discussion took place in open court:
BY THE COURT: Okay. I’m going to go back on record on the case of the State of Mississippi v. Michael Jamison a/k/a Hop-Sing a/k/a Michael Hughes.
Mr. Mallette [the State], you advised me maybe we need to go on the record on something in this case?
BY MR. MALLETTE: My understanding is that Mr. Baum [Defense counsel] came to me and said that Mr. Jamison may be inclined at this time to waive the proper chain of custody that is the reason Mr. White is available for (sic). And if that’s what he wishes to do, we would like to speak on the record with the Court about that.
BY THE COURT: I guess I need to hear from Mr. Baum first.
BY MR. BAUM: Yes, sir, Your Honor. Your Honor, this is our position. After the court ruled, I talked to Mr. Hughes about this. You know it’s still our position that the matter, you know, should have been tried. And we shouldn’t have to waive the chain of custody. And, actually, our position is the charge ought to be dismissed, and we so move. But having said that, Mr. Hughes informs me that he wants a trial this week. And if the only way to get it is to waive the chain of custody problem, then that’s what he wants to do. I’ve advised him and counselled him against that. That’s my opinion. I wouldn’t do that. But this is what he wants, and he’s got a right to be heard on it and so—
BY THE COURT: Now, was that — do you go by Jamison or Hughes?
BY THE DEFENDANT: Hughes.
BY THE COURT: Okay. Mr. Hughes, is what your attorney’s advising the court correct? That is, what you’re willing to— basically, what the chain of custody is, is an evidence officer has to take possession of the alleged drug and place it in the evidence vault. He’s not available to testify that he was actually the one that put it in the evidence vault and then took it to Jackson and then retrieved it from the crime lab. He’s on maneuvers in Fort McClelland, Alabama, and not available this term.
*364 And is it correct that you’re willing to waive that testimony of the chain of custody and basically concede that the chain of custody was proper and proceed with trial?
BY THE DEFENDANT: Yeah.
BY THE COURT: Now, you understand, now, that is an issue that your attorney could raise at trial if you don’t waive that. But by having it, now, that’s not an issue that’s even going to be allowed by the Court to be coming into play. Do you understand that?
Of course, I believe your contention is you’re not guilty of doing anything so, you know, the chain of custody based on your defense is, I guess, not one that’s material anyway. But you are stating specifically that you are waiving that chain of custody problem?
BY THE DEFENDANT: Yes, sir.
BY THE COURT: And you’ve discussed that with your attorney? Is that correct?
BY THE DEFENDANT: Yes.
BY THE COURT: And discussing that with your attorney and he’s advised you against it, but still wish to proceed with trial this week. Is that correct?
BY THE DEFENDANT: Yeah.
BY THE COURT: I certainly think Mr. Jamison ultimately is the one that controls his defense and controls his case. And if he wishes to proceed with that waiver, then I’ll certainly allow it. Y’all can get together. And, I mean, I think any day this week is available....
(R. 14-17).
¶ 19. Jamison chose to waive his right to confront the chain-of-custody witness despite the objections of his court appointed counsel. The trial court questioned Jami-son about his decision to go to trial instead of waiting until the next term of court when the witness would be available to testify.
¶ 20. Jamison could have maintained his objections to a lack of speedy trial and the chain-of-custody of the evidence had he accepted the continuance of his trial. Instead, he knowingly chose to waive his objection to the chain-of-custody issue and proceed to trial immediately. It is clear from the record that Jamison was not forced to choose between his constitutional right to confront a witness against him and his constitutional and statutory rights to a speedy trial. Therefore, this assignment of error is without merit.
II. WHETHER THE TRIAL COURT ERRED IN ADMITTING EVIDENCE REGARDING DRUG ENFORCEMENT OPERATIONS NOT INVOLVING JAMISON
¶ 21. Under Mississippi Rule of Evidence 404, character evidence is generally not admissible to prove conduct. In Jenkins v. State, 507 So.2d 89 (Miss.1987), the Mississippi Supreme Court stated:
To be sure evidence admissible under Rule 404(b) is also subject to the prejudice test of Rule 403; that is, even though the circuit court considered the evidence at issue admissible under Rule 404(b), it was still required by Rule 403 to consider whether its probative value on the issues of motive, opportunity, and intent was substantially outweighed by the danger of unfair prejudice. In this sense, Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass.
¶ 22. The Mississippi Supreme Court in Watts v. State, 635 So.2d 1364 (Miss.1994) stated, “This state has long adhered to the rule that the issue on a criminal trial should be single and that the evidence should be limited to what is relevant tó the single issue.” In Collins v. State, 513 So.2d 877, 878 (Miss.1987), the court “defined relevant evidence as that which tends to show whether a fact of consequence to an action occurred vel non.”
¶ 23. We must consider the testimony from Sergeant Phillip Franks, with the Kosciusko Police Department, as he was questioned by the State:
*365 BY MR. MALLETTE: Okay. Did you do an arrest warrant on that particular date or some time after?
BY MR. FRANKS: On the date-on the 13th?
BY MR. MALLETTE: Right.
BY MR. FRANKS: No, sir. Did not do an arrest warrant at that time.
BY MR. MALLETTE: And explain to the court and the jury why you did not do that?
BY MR. FRANKS: We were—
BY MR. BAUM (defense counsel): Your Honor, I object to the relevancy of this.
BY MR. MALLETTE: It’s relevant as to why they didn’t arrest him at that time, Your Honor. I think that—
BY THE COURT: I overrule the objection.
BY MR. FRANKS: What we were doing is doing an ongoing investigation. We’re using the same informants to purchase crack cocaine. So we were waiting until we got through using those informants before we made any arrest.
BY MR. MALLETTE: Would an immediate arrest of Mr. Jamison jeopardize that operation at that time?
BY MR. FRANKS: Yes, sir, it would have.
BY MR. MALLETTE: Do you see Michael Jamison or Michael Hughes or Hop-Sing in the courtroom here today?
BY MR. FRANKS: Yes, sir, I do.
BY MR. MALLETTE: Would you point to him, please?
BY MR. FRANKS: He’s right here.
BY MR. MALLETTE: Your Honor, I’d like to have the record reflect that he’s identified the defendant?
BY THE COURT: Let it so reflect.
(R. 62-3).
¶ 24. In summary, Franks testified that he did not arrest Jamison after the undercover purchase had been completed because he did not want to risk exposing the informant and undercover operatives in the area. Furthermore, the record does not indicate that Franks testified about any other purchases from Jamison. Finally, Franks’s testimony did not suggest either directly or by implication that Jami-son was involved in other cocaine sales.
¶ 25. In the case sub judice, Jamison asserts that he was prejudiced before the jury because the trial court allowed the State to present evidence about other drug operations in the area. However, the record indicates that Jamison’s objection was to the relevancy of testimony about why he was not arrested on July 13, 1996, the same day as the sale. No objection was made on the basis of prejudicial information about other criminal activity by Jami-son which he now asserts on appeal. In Haddox v. State, 636 So.2d 1229, 1240 (Miss.1994), the court stated that where arguments are not properly preserved for appeal, appellate courts cannot consider them. Despite this procedural bar, the testimony of other ongoing undercover drug operations did not implicate Jamison in those drug purchases. Instead, the State’s witness was explaining his reasoning for delaying the arrest of Jamison in order to protect undercover agents. Therefore, this assignment of error is without merit.
III. WHETHER THERE WAS SUFFICIENT EVIDENCE IN THE RECORD FOR FINDING THAT MICHAEL JAMISON, MICHAEL HUGHES, AND HOP-SING WERE ALL NAMES USED BY THE DEFENDANT IN THIS CASE
¶ 26. Although Jamison’s own hand-written appellate brief from the Atta-la County Circuit Court is difficult to understand, this Court follows the dictates of Myers v. State, 583 So.2d 174, 176 (Miss.1991) by taking into account the fact that a prisoner proceeding pro se deserves credit for allegations that are not well pleaded and “that a prisoner’s meritorious complaint may not be lost because [it is] inart-fully drafted.” In his separate brief, Jami- *366 son argues, as he did outside the presence of the jury, that he is Michael Hughes and not Michael Jamison. Jamison relies on a social security card bearing the name Michael Hughes that he presented at trial in conjunction with his discourse with the trial court about his identity to prove that he is Michael Hughes.
¶27. In Course v. State, 461 So.2d 770 (Miss.1984), the Mississippi Supreme Court found that a presumption of identity was established when documents concerning prior felonies by a convict with the same name as the person being tried were introduced into evidence.
¶ 28. The record indicates that he was originally indicted as Michael Jamison but that it was dismissed without prejudice. However, Jamison was reindicted as Michael Jamison, also known as, Michael Hughes, also known as, Hop-Sing. Furthermore, the record reveals'that Jamison admitted that people in Kosciusko knew him as Michael Jamison, and that he had, in fact been tried, and answered to the name of Michael Jamison on charges in court within two years of this case. The trial court took judicial notice of the fact that he had previously been before the court and answered to the name Michael Jamison. Additionally, Jamison admitted that his street name was Hop-Sing, and an undercover agent testified that he was introduced to Jamison as Hop-Sing. Jami-son was identified in the courtroom and on the video tape of the cocaine purchase as being the same person referred to as Hop-Sing in Kosciusko.
¶ 29. Finally, at Jamison’s sentencing, prior indictments, judgments, and sentences for Michael Jamison were introduced. Neither Jamison nor his attorney contested that the defendant in this case was the same Michael Jamison as had been previously indicted, tried, found guilty, and sentenced in that judicial district.
¶ 30. Where a trial judge makes a factual finding supported by the record, this Court will not overturn that finding of fact unless it is clearly erroneous. West v. State, 463 So.2d 1048, 1056 (Miss.1985). Here, the trial judge’s factual findings were supported by substantial, credible evidence in the record. Finding no error in that factual determination, this assignment of error is without merit.
¶ 31. THE JUDGMENT OF THE AT-TALA COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF A SCHEDULE II CONTROLLED SUBSTANCE, COCAINE, AS A HABITUAL OFFENDER, AND TO SERVE A SENTENCE OF SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE AND FINE OF $5,000.00 IS AFFIRMED. SENTENCE SHALL RUN CONSECUTIVE TO ANY SENTENCE PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE TAXED TO ATTALA COUNTY.
McMILLIN, C. J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.