798 So.2d 638 (2001)
Alton HARVESTON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00395-COA.
Court of Appeals of Mississippi.
October 30, 2001.
*639 David H. Strong Jr., Magnolia, Attorney for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Jackson, Attorney for Appellee.
Before McMILLIN, C.J., BRIDGES, and MYERS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Alton Harveston was indicted for four counts of automobile burglary. At the trial on the charges, the court directed a defendant's verdict on Count One at the close of the evidence and submitted the remaining three counts to the jury. The jury convicted Harveston on all three of those counts. From that conviction returned by a Lincoln County Circuit Court jury, Harveston has perfected this appeal. In the appeal, Harveston raises two issues. First, he claims that the trial court erred in admitting information contained in National Crime Information Center (NCIC) computer printouts to establish ownership of two of the three burglarized automobiles for which he now stands convicted. Secondly, Harveston claims that the verdict was against the weight of the evidence since his involvement in the break-ins was shown principally through the testimony of his alleged accomplice, a witness that Harveston says was so thoroughly impeached as to render his testimony unworthy of belief. We find Harveston's first issue to have merit, a fact which requires us to reverse and remand his convictions on Counts Two and Four. We find no merit in Harveston's claim that the verdict was against the weight of the evidence. Therefore, we affirm his conviction on Count Three.

I.

Facts
¶ 2. Taken in the light most favorable to the State, there was competent evidence *640 presented to the jury showing that Harveston rented a room at a motel in Brookhaven on the night of August 20, 1999, which he occupied with a seventeen year-old male companion, Matthew Emfinger. During the course of the night, Harveston and Emfinger embarked on a course of physically breaking into a number of cars on the motel parking lot, extracting items from the vehicles, and secreting those items in their rented motel room. At some point, Emfinger's attempts to gain entry to one vehicle attracted the attention of another motel guest who pursued Emfinger and detained him. Emfinger then took that person to the motel room where the door was opened by Harveston. Despite being warned to remain until the police arrived, Harveston verbally denied any part in Emfinger's activities and departed the motel on foot.
¶ 3. Emfinger, in his original statement to police, named a person other than Harveston as his accomplice, but later retracted that statement and implicated Harveston. At trial, Emfinger gave a detailed recitation of his and Harveston's activities on the night in question. This testimony, beyond question, provided ample evidence of Harveston's involvement in the various automobile break-ins. The jury found Harveston guilty on three counts and this appeal ensued.

II.

Evidence of Ownership of the Burglarized Vehicles
¶ 4. The State's proof in a burglary case must include evidence of the ownership of the premises broken into, since ownership in someone other than the defendant is an essential element of a burglary charge. Cooksey v. State, 175 Miss. 82, 82, 166 So. 388, 390 (1936). In this case, the only evidence of ownership as to two of the vehicles mentioned in the indictment was a computer printout obtained by investigating officers purporting to show the registered owner of the vehicle.
¶ 5. Officer Henderson testified that he obtained the vehicle identification number for the vehicles that were broken into and ran an inquiry as to those numbers through the National Crime Information Computer (commonly referred to as the NCIC). Officer Henderson testified that his department used the NCIC on a routine basis to retrieve "information on tags, driver licenses." The State at that point offered the computer printout into evidence after Officer Henderson identified it as being that obtained from his NCIC inquiry. Harveston objected to the admission of such printouts to show ownership, claiming that the printouts were not "the best evidence" to establish this essential element of the State's case. The trial court admitted the evidence, stating that it was "a record kept in the normal course of business and we will allow it."
¶ 6. The State, despite defense counsel's characterization of his objection as a "best evidence" objection, treated it as a hearsay objection. The trial court appeared to do the same in ruling on the objection. The matter has been treated similarly by both parties to this appeal. We will, therefore, proceed to decide the case as a matter of the hearsay nature of the evidence and whether it was properly admissible under a recognized exception to the hearsay rule.
¶ 7. It is clear that the trial court was treating the document as a "business records" exception to the exclusionary provisions of the hearsay rule. This exception, appearing as Rule 803(6) of the Mississippi Rules of Evidence, permits introduction of a "data compilation ... of... events ... from information transmitted by ... a person with knowledge, if kept in the course of a regularly conducted *641 business activity...." M.R.E. 803(6). Such business records have been recognized as an exception to the hearsay rule because the method of compiling the information inspires a sense of its trustworthiness that is seen to substitute for the confidence traditionally gained from the confrontation and cross-examination of the adversarial process. See Logan v. State, 773 So.2d 338, 345 (¶ 25) (Miss.2000).
¶ 8. This Court has previously held that NCIC printouts purporting to contain abstracts of a person's prior criminal convictions when offered to support a request for enhanced punishment for a habitual offender could not avoid the exclusionary provisions of the hearsay rule. Sanders v. State, 786 So.2d 1078, 1082 (¶ 11) (Miss.Ct. App.2001). There is no indication in the Sanders opinion that the State had sought to admit the records under the business records exception of Rule 803(6), so that this Court was not squarely faced with that question in Sanders. Because it has been raised in this case, we must consider the effect of such a claim on our prior ruling in the Sanders case.
¶ 9. The burden of showing the admissibility of evidence is on the proponent of the evidence. Jolly v. State, 269 So.2d 650, 654-655 (Miss.1972). The business records exception to the hearsay exclusionary rule requires that some predicate be laid as to the entity compiling the data and the methods employed by that entity to collect the information found in the records. Only with that information can the trustworthiness of the records be reasonably ascertained. M.R.E. 803(6); see State v. McGee, 131 N.J.Super, 292, 329 A.2d 581, 584-85 (1974).
¶ 10. In the case before us, there was no evidence offered as to the means by which the information regarding registered ownership of the vehicles was compiled. The only testimony came from an investigating officer who limited his testimony to the fact that law enforcement officers routinely make use of such information. The reliability of the information in "business records" is determined by the competence of the compiler of the information and not the extent of the consumer's reliance on information received from another source.
Problems may arise when one business organization seeks to introduce records in its possession but actually prepared by another. Obviously, mere possession or "custody" of records under these circumstances does not qualify employees of the possessing party to lay the requisite foundation, and transmittal of information by the custodian regarding the contents of records in the custodian's possession does not qualify the recipient to lay the foundation.
2 McCormick on Evidence § 292 (John W. Strong ed., 5th ed.1999).
¶ 11. Because the necessary predicate was not laid showing how registration information on motor vehicles is compiled and made available by computer connection to law enforcement authorities, we conclude that, in this case, the NCIC printout purporting to reveal ownership of the particular motor vehicles in question did not demonstrate the necessary indications of trustworthiness to be admitted over a hearsay objection. See, e.g., Journal Publishing Co. v. McCullough, 743 So.2d 352, 355(¶ 5) (Miss.1999).
¶ 12. As to the remaining count, the State produced the owner of the vehicle who testified to his ownership of the automobile. He reported having observed his vehicle on the night of the incident showing evidence of being forcibly entered. He also identified certain items as missing that were formerly in the vehicle. As to this count, which was Count Three of the *642 original indictment, the proof of ownership was certainly sufficient to affirm Harveston's conviction.
¶ 13. With the exclusion of the evidence of ownership of the vehicles covered in Counts Two and Four, the State's evidence falls short of that necessary to support a conviction of burglary of an automobile. However, because the improperly-admitted evidence was nonetheless relevant on the issue of ownership, the error is classed as a procedural one rather than as one going directly to the sufficiency of the evidence. May v. State, 460 So.2d 778, 781 (Miss. 1984). For that reason, the proper remedy is to reverse and remand rather than reverse and render a judgment of acquittal on these two counts. Id.

III.

Weight of the Evidence
¶ 14. The jury is charged to hear the witnesses and to decide what weight and worth to assign to any particular witness. Neal v. State, 451 So.2d 743, 758 (Miss.1984). The jury heard Emfinger implicate Harveston in the various burglaries and heard him explain the circumstances under which he originally offered a different version of events to police. Emfinger testified that he had feared for his personal safety and that of his mother at the hands of Harveston and that this was the reason he initially named another person as his accomplice in the spree. Multiple witnesses testified for the State that they had spent time on the evening in question with Emfinger and Harveston, ultimately leaving the two of them together in the motel room that eventually served as the headquarters for the burglary enterprise. All these witnesses testified that they had not seen the person originally named by Emfinger at any time that night. A disinterested witness testified to confronting Harveston in the motel room after having been led there by Emfinger when he apprehended Emfinger in the act of breaking into a truck. This witness testified that he informed Harveston that the police were being summoned and that it was important for Harveston to remain and "clear his name" if he, in fact, had no role in the enterprise. Nevertheless, Harveston hurriedly fled the motel on foot. Evidence of unexplained flight is, in itself, incriminating. Warren v. State, 709 So.2d 415, 419-20 (¶¶ 21-23) (Miss.1998).
¶ 15. We do not find, as Harveston would have us do, that Emfinger's testimony was so substantially impeached by proof that he had originally offered a different version of events that we would be compelled to set aside this verdict as being against the weight of the evidence. This issue is also without merit.
¶ 16. There being no appeal taken from the trial court's disposition of Count One of the indictment, the mandate of this Court relates solely to our disposition of Counts Two, Three and Four of the indictment.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF CONVICTIONS OF BURGLARY OF AN AUTOMOBILE ON COUNTS TWO AND FOUR OF THE INDICTMENT IS REVERSED AND REMANDED. THE JUDGMENT OF CONVICTION AS TO COUNT THREE AND THE RESULTING SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FINE OF $1,000, AND PAYMENT OF $250 TO THE CRIME VICTIM'S COMPENSATION FUND IS AFFIRMED. THIS CAUSE IS REMANDED TO THE CIRCUIT COURT OF LINCOLN COUNTY FOR SUCH FURTHER PROCEEDINGS AS ARE APPROPRIATE UNDER COUNTS TWO AND FOUR. COSTS OF THIS APPEAL *643 ARE TAXED TO LINCOLN COUNTY.
KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., concur.