828 So.2d 239 (2002)
Steven ARMSTRONG, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01012-COA.
Court of Appeals of Mississippi.
September 24, 2002.
*240 Ross Parker Simons, attorney for appellant.
Office of the Attorney General by John R. Henry Jr., attorney for appellee.
Before KING, P.J., IRVING, and BRANTLEY, JJ.
BRANTLEY, J., for the Court.
¶ 1. Steven Armstrong was convicted in the Circuit Court of Jackson County on a charge of aggravated assault. After a sentencing hearing, he was found to be an habitual offender and sentenced to serve a term of fifteen years without parole in the custody of the Mississippi Department of Corrections. He then filed a motion for a judgment notwithstanding the verdict, or in the alternative, a new trial which was denied by the court. Armstrong appeals asserting the following assignments of error:
I. WHETHER THE TRIAL COURT ERRED IN AMENDING JURY INSTRUCTION D-8.
II. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE EVIDENCE PRESENTED WAS SUFFICIENT TO ESTABLISH ARMSTRONG'S HABITUAL OFFENDER STATUS PURSUANT TO MISS. CODE ANN. SECTION 99-19-83 (REV.2000).
Finding no error, we affirm.

FACTS
¶ 2. On May 10, 1999, Bonnie Pace, sixty-one years of age, was in charge of a worksite for setting forms for pouring concrete. *241 Steven Armstrong was employed on the worksite to cut the wooden stakes used to hold the concrete forms in place. Pace and Armstrong had an argument about what length the stakes should be. After this exchange, Armstrong intentionally struck Pace twice with a wooden stake which resulted in Pace's hospitalization for about a week. Although it is clear that Armstrong intentionally struck Pace, the testimony was in dispute as to why it happened.
¶ 3. At trial, the State called Pace and he testified that, at the conclusion of the exchange, he instructed Armstrong to follow his directions and turned to work on other matters. At this time, Pace was struck without warning on the side of his head by Armstrong. Armstrong then struck Pace again, but Pace was able to partially deflect the second blow with his arm. The State further showed that Pace was making no hostile demonstration toward Armstrong, and that he did not have a tool or any other object in his hands when Armstrong struck him. This testimony was corroborated by other workmen on the site at that time.
¶ 4. Alternatively, Armstrong alleged that he struck Pace in self-defense. He alleges that after the argument ensued, Pace "pushed-turned" him and turned away in the direction of a "Skill" saw. He claimed that he thought Pace was drunk and was going to reach for the saw and attack him. Therefore, according to this perception, he hit Pace with one of the stakes in self-defense. The evidence showed that a saw was in the area. No challenge is brought on this appeal concerning the sufficiency or the weight of the evidence concerning Armstrong's guilt.

ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN AMENDING JURY INSTRUCTION D-8.
¶ 5. Armstrong presented a theory of self-defense. In the event the jury did not believe his argument of self-defense, he wanted the jury to determine whether the board or stake used to assault Pace constituted a deadly weapon for purposes of aggravated assault. Therefore, he represented to the court that if the jury found that the board was not a deadly weapon, then they should consider whether he attempted to cause or did purposefully, knowingly or recklessly cause bodily injury for the purposes of simple assault.
¶ 6. Based on his argument and on Miss. Code Ann. § 97-3-7(1)(a), Armstrong submitted the following lesser offense instruction, D-8, on the crime of simple assault:
If you find that the State has failed to prove any one or more of the essential elements of the crime of aggravated assault, you will then proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the elements of the crime of simple assault.
If you find from the evidence in this case beyond a reasonable doubt that Steven Armstrong on or about May 10, 1999, did purposefully, knowingly, or recklessly cause bodily injury to Bonnie Pace, [not with a deadly weapon, or] not in his necessary self-defense, then you shall find Steven Armstrong guilty of simple assault.
Miss.Code Ann. § 97-3-7(1 Xa) (Rev.2000) provides that "(1) [a] person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another."
¶ 7. Alternatively, the State prosecuted Armstrong for aggravated assault based on Miss.Code Ann. § 97-3-7(2)(b) (Rev. 2000). Section 97-3-7(2)(b) provides that *242 "[a] person is guilty of aggravated assault if he (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm...." Specifically, the indictment alleged that Armstrong "did unlawfully, feloniously, willfully, and purposefully cause bodily injury to Bonnie Pace with a deadly weapon, ... a wooden board." Therefore, the State requested that the simple assault instruction, D-8, include the words "not with a deadly weapon, or," which are underlined and set out within the brackets above. The State requested the insertion in order to avoid possible confusion between the applicable form of simple assault, which was advanced by Armstrong, and aggravated assault, which was advanced by the State. The addition served to clarify and distinguish the applicable two forms of assault for the jury by explicitly setting forth the essential difference of whether bodily injury, if any, was caused by the use of a deadly weapon.
¶ 8. The State also requested the addition in order to be consistent with another instruction, S-2. Instruction S-2 defined simple assault and aggravated assault in accordance with the evidence presented in the case. Instruction S-2 also included the added language in an attempt to clarify and distinguish the available lesser offense of simple assault from the given definition of aggravated assault on the basis of whether a deadly weapon was used to cause the bodily injury.
¶ 9. The trial court granted the instruction for simple assault because of the possibility that the jury might find that the wooden stake was not a deadly weapon, an essential and required element for a conviction of aggravated assault. The trial judge also admitted the addition with the instruction.
¶ 10. Armstrong makes several arguments in this assignment of error. First he asserts that it was an error to allow the additional language because it incorrectly apprized the jury of the various forms of simple assault and denied him the right to present to the jury an instruction in support of his various theories of defense. He states that the additional language in the instruction limited the jury to only consider the simple assault verdict if there was a finding that the stake was not a deadly weapon. He states that this is incorrect because a verdict of simple assault is also available even when a deadly weapon is used according to Miss.Code Ann. § 97-3-7(1)(b). Section 97-3-7(1)(b) provides that an accused may be found guilty of simple assault if he negligently used a deadly weapon to cause bodily harm. In the present case, Armstrong asserts that such an instruction based on § 97-3-7(1)(b) was applicable because he was negligent in his assessment that Pace was about to obtain the saw and hit him. He argues that where an accused has negligently concluded that another is presenting or is about to present a risk of imminent serious bodily injury, a negligent simple assault instruction should be given. Therefore, he argues that the additional language effectively denied the jury the opportunity to consider this other form of simple assault.
¶ 11. To warrant the lesser-included offense instruction, a defendant must point to some evidence in the record from which a jury could reasonably find him not guilty of the crime with which he was charged and at the same time find him guilty of the lesser-included offense. Toliver v. State, 600 So.2d 186, 192 (Miss. 1992). Upon review, the instruction given did not inform the jury of the form of simple assault based on the negligent use of a deadly weapon. However, Armstrong *243 clearly proceeded at trial under Miss.Code Ann. Section 97-3-7(1)(a) for an instruction of simple assault based on a finding that the wooden stake was not a deadly weapon and never presented a theory of defense based on negligence as provided in Section 97-3-7(1)(b). As stated, Section 97-3-7(1)(b) provides that the lesser verdict of simple assault is available if the jury finds that the bodily injury was caused by the negligent use of a deadly weapon. Therefore, in light of Toliver, a jury could not have reasonably found him guilty of the lesser-included offense of simple assault based on the negligent use of a deadly weapon because no such evidence was ever presented before them.
¶ 12. In addition, Armstrong's argument based on the statute is misplaced. Miss.Code Ann. § 97-3-7(1)(b) (Rev.2000), provides that a person is guilty of simple assault if he negligently causes bodily injury to another with a deadly weapon. The allegation that Armstrong might have been mistaken in his perception does not establish that his subsequent act of assaulting Pace was negligent. The intentional striking of Pace necessarily excluded any theory of a negligent striking. That Armstrong might have erred in his assessment of what Pace was doing does not potentially establish a negligent act because, regardless of what he believed and the reasonableness of what he believed, he did, in fact, intend to strike Pace. Pace was not negligently struck with the board or the stake; he was intentionally struck. Negligence for purposes of this form of simple assault does not have reference to an accused's state of mind. It has reference to his action. Nobles v. State, 464 So.2d 1151, 1154 (Miss.1985). Therefore, an instruction based on the negligent use of a deadly weapon would have been improper to grant because there was never any evidence presented to warrant a negligent simple assault instruction under Miss.Code Ann. § 97-3-7(1)(b) (Rev.2000). See Murphy v. State, 566 So.2d 1201, 1206 (Miss. 1990); Goodnite v. State, 799 So.2d 64, 69(¶ 24) (Miss.2001); Alley v. Praschak Mach Co., 366 So.2d 661, 665 (Miss. 1979).
¶ 13. Furthermore, he never requested or submitted an instruction for the lesser verdict of simple assault based on the negligent use of a deadly weapon as provided in Section 97-3-7(1)(b). Also, no argument was made by Armstrong when instruction D-8 was being considered that any theory of negligence would be cut off by the modification. Consequently, his claim is barred. Billiot v. State, 454 So.2d 445, 462 (Miss.1984) (failure to request instruction and failure to object to lack of instruction works waiver of issue on appeal); Oates v. State, 421 So.2d 1025, 1030 (Miss.1982) (objections to instructions not made in trial court are waived on appeal).
¶ 14. Armstrong further argues that it was the duty of the trial court to inform the jury of the form or element of simple assault that applies to the finding that a deadly weapon was used in a negligent manner to cause bodily injury as provided in Miss.Code Ann. § 97-3-7(1)(b). A defendant is entitled to have jury instructions given which present his theory of the case. Heidel v. State, 587 So.2d 835, 842 (Miss.1991). However, this entitlement is limited to instructions that have a foundation in the evidence. Id. In addition, the trial court has no duty to instruct a jury where no request has been made for such instruction. Ballenger v. State, 667 So.2d 1242, 1252 (Miss.1995). In the present case, the trial court provided instructions on the defendant's theory of self-defense and granted an instruction on the lesser charge of simple assault applicable to this case. As stated earlier, there was also no request for the instruction *244 and such an instruction was not supported by the evidence.
¶ 15. In Armstrong's second argument in this assignment of error, he contends that the trial court erred by inserting language that was not in the statute. Armstrong cites no authority for the notion implicit in his argument that to include language not found in a statute is error, and we have found none ourselves. On the other hand, while it is certainly true that a trial court does not likely commit error in an instruction of law when it follows the language of a statute, Lenox v. State, 727 So.2d 753, 759 (¶ 37) (Miss.Ct. App.1998), there is no authority of which we are aware to the effect that instructions must be restricted to the particular words of the statute in question. The lower court enjoys considerable discretion regarding the form and substance of jury instructions. Rester v. Lott, 566 So.2d 1266, 1269 (Miss. 1990). The dispositive question is whether the jury was fully and correctly instructed on the principle of law involved.
¶ 16. If the instructions given provide correct statements of the law and are supported by the evidence, there is no prejudice to the defendant. Johnson v. State, 792 So.2d 253, 258(¶ 16) (Miss.2001). If the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. Fielder v. Magnolia Beverage Co., 757 So.2d 925, 929 (¶10) (Miss.1999). We find that the instruction was correct as a matter of law and relevant to the facts and evidence presented in this case. The court's modification to the simple assault instruction clarified for the jury the distinction between the forms of simple and aggravated assault involved in the case at bar, distinctly whether bodily injury, if any, was caused by the use of a deadly weapon. The additional language does inform the jury correctly and adequately on the simple assault claim advanced by Armstrong, as well as clarifies and avoids confusion between the forms of aggravated assault and simple assault applicable to this case. Therefore, the trial court did not err by inserting the language not contained in the statute.
¶ 17. Armstrong next claims in this assignment of error that by not having the instruction re-typed, the trial court drew unnecessary attention to the additional language, "not with a deadly weapon." Therefore, he further claims that this obliterated any consideration it had of the lesser offense once it found that the board in evidence in this case was a deadly weapon. Cases are legion in which a trial court has corrected or modified instructions by hand. Armstrong has cited no authority in support of this argument. There is no requirement that an instruction be re-typed that we are aware of. In addition, this Court will not review any issues where the party has failed to cite relevant authority. Williams v. State, 708 So.2d 1358, 1360-61(¶ 12) (Miss.1998). In any event, the trial court instructed the jurors that they were not to place any significance to the way or manner instructions were given to them. We find that this was sufficient to cure any prejudicial effect that Armstrong claims.
¶ 18. Armstrong's final argument in this assignment of error is that the board that was placed into evidence was a different size than the board that he used to strike Pace. The work crew was using 4x4 boards and splitting them into 2x4 boards to make the stakes. A 4x4 board was introduced into evidence, but the testimony showed that Pace was struck with a 2x2 board. We find no prejudice because the 4x4 board introduced into evidence simply showed what the men were using *245 and the testimony clearly showed that these were split. There was no confusion, given the testimony. The State was not attempting to prove that Armstrong had used some instrumentality in the attack that he did not in fact use. Therefore, this assignment of error is without merit.
II. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE EVIDENCE PRESENTED WAS SUFFICIENT TO ESTABLISH ARMSTRONG'S HABITUAL OFFENDER STATUS PURSUANT TO MISS. CODE ANN. SECTION 99-19-83 (REV.2000).
¶ 19. The trial court found that Armstrong was an habitual offender based on evidence presented by the State that he had been convicted of two felonies in the State of Michigan. Armstrong argues that the evidence was insufficient to prove that he was the same Steven Armstrong who was convicted of the crimes in Michigan. This Court disagrees.
¶ 20. Where a trial judge makes a factual finding supported by the record, we will not overturn that finding of fact unless it is clearly erroneous. West v. State, 463 So.2d 1048, 1056 (Miss.1985). In the present case, the lower court's factual findings were supported by substantial, credible evidence in the record that the appellant was the same person that was convicted in Michigan.
¶ 21. The record reflects that the State's proof was legally sufficient to demonstrate that Steven Armstrong in the present case and the Steven Armstrong who was twice convicted in the State of Michigan are one and the same. First, the State presented and entered into evidence from the State of Michigan certified copies of two prior convictions of Steven Armstrong resulting in sentences of more than one year. The documents further provided identification information of the convicted Steven Armstrong such as date of birth and an assigned state number. Next, the record also reflects the testimony of two persons, the case officer and an accepted qualified expert in fingerprinting.
¶ 22. The case officer of the Ocean Springs Police Department testified as to the information in their investigative file obtained for the case from Armstrong at the time of arrest. He stated that the file contained information such as Armstrong's date of birth, fingerprints, social security number, physical description (gender, race, height, weight, scars), and a photograph. He further stated that he conducted a National Crime Information Center (NCIC) check on Armstrong to see if he had a prior criminal history or was wanted in another state. After his request, he received a NCIC report which included information regarding Steven Armstrong such as his date of birth, social security number, physical information, a numerical fingerprint description code, and listed that he had been convicted of two separate felonies in the State of Michigan and a Michigan identification number. The officer stated that the information provided in the NCIC report matched the information obtained from Armstrong at the time of arrest, particularly as to his date of birth, social security number, and physical description, including sex, race, height, weight, and a scar on the left leg. The NCIC report and a photocopy of Armstrong's fingerprints obtained at the time of arrest from the Ocean Springs Police Department were admitted into evidence.
¶ 23. The record also reveals that the second witness, accepted by the court as a qualified expert in the field of fingerprint examination, testified concerning his comparison of the appellant's fingerprints obtained at the time of arrest and the numerical description regarding the fingerprints *246 provided in the NCIC report of the Steven Armstrong convicted in Michigan. He concluded that "given this comparison and the other identifying data from the NCIC report, he was ninety-nine percent certain that the appellant was one and the same person as the individual described in the NCIC report." On cross-examination, the officer also testified that in his years of experience in law enforcement he has found NCIC reports to be accurate and reliable.
¶ 24. Upon further review, we also note that the date of birth provided in the certified documents from Michigan was identical to the date of birth in the Mississippi investigative file and the Michigan identification number provided in the documents was the same as the number on the NCIC report. In addition, there was no evidence offered against the State's evidence.
¶ 25. Armstrong next claims that the NCIC report was improperly admitted because it was "inadmissible hearsay," unreliable and not subject to the "business record exception" under M.R.E. 803(6). However, this claim is without merit because the Mississippi Supreme Court stated in Randall v. State "that Rule 101 and 1101(b)(3) [provide] that the Rules of Evidence do not apply to sentence hearings." Randall v. State, 806 So.2d 185, 231-32 (¶ 131) (Miss.2001). Mississippi Rule of Evidence 101 states that the rules apply to all proceedings except those stated in Rule 1101(3)(b). M.R.E. 1101(3)(b) states that the rules of evidence are inapplicable to proceedings in sentencing.
¶ 26. Although this Court in Harveston v. State, 798 So.2d 638, 640-41(¶ 7) (Miss. Ct.App.2001), subsequent to the holding in Randall, stated that an NCIC report offered by a local investigating officer was inadmissible hearsay, and not able to satisfy the business record rule exception of M.R.E. 803(6) because an issue of trustworthiness arises when one organization seeks to introduce records in its possession that were actually prepared by another. Unlike in the present case and distinguished from the exceptions set forth in M.R.E. 1101(3)(b), in Harveston the report was offered not during the sentencing proceeding, but in the trial phase of a burglary prosecution to prove an essential element, ownership of a stolen vehicle. Therefore, because of this distinction, our holding in the present case, which is consistent with Randall and the Rules of Evidence, is not in conflict with Harveston.
¶ 27. Armstrong's last claim in this assignment of error is that the State failed to prove that he served separate terms of at least one year each on his prior convictions. "An essential ingredient [element] of this section [99-19-83] is that the defendant shall have served at least one year under each sentence." Ellis v. State, 485 So.2d 1062 (Miss.1986).
¶ 28. The certified copies of the two prior convictions stated that Armstrong was to serve minimum two year sentences on each conviction. According to the certified documents from Michigan, Armstrong's first sentence to serve a minimum of two years began on May 25, 1988, and while in prison, he assaulted an employee and was convicted on June 26, 1989, and sentenced to serve another minimum term of two years. This is all that is required of the State. See Nathan v. State, 552 So.2d 99, 106 (Miss.1989). Thus, this assignment of error is without merit.
¶ 29. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT *247 OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS ARE ASSESSED TO JACKSON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.