FAIR, J.,
for the Court:
¶ 1. Wiley Carroll was banished from the Third Circuit Court District as a condition of his post-release supervision. He appeals the dismissal of his post-conviction-relief (PCR) petition for removal of the banishment restriction as illegal. He also claims his counsel was ineffective in allowing him to agree to an illegal sentence. Because the record before us does not indicate whether the trial court addressed the requisite banishment considerations, as articulated in Cobb v. State, 437 So.2d *473 1218, 1220-21 (Miss.1983), we reverse and remand.
STANDARD OF REVIEW
¶ 2. The trial court may summarily dismiss a PCR motion without an eviden-tiary hearing “[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief.” Miss.Code Ann. § 99-39-11(2) (Supp.2012). To succeed on appeal, the petitioner must: (1) make a substantial showing of the denial of a state or federal right and (2) show that the claim is procedurally alive. Young v. State, 731 So.2d 1120, 1122 (¶ 9) (Miss.1999).
¶ 3. When reviewing the denial of a PCR motion, an appellate court “will not disturb the trial court’s factual findings unless they are found to be clearly erroneous.” Callins v. State, 975 So.2d 219, 222 (¶ 8) (Miss.2008). Our review of the summary dismissal of a PCR motion, a question of law, is de novo. Young, 731 So.2d at 1122 (¶ 9).
FACTS
¶ 4. On February 11, 2004, Carroll pled guilty to attempted robbery and was sentenced to twenty years in the custody of the Mississippi Department of Corrections, with nine years to serve, eleven years suspended, and the first five years of suspended incarceration on post-release supervision. In exchange for his plea, the State agreed to drop other charges pending against both him and his wife. As a condition of the post-release supervision portion of his sentence, Carroll was banished from the Third Circuit Court District. He made no objection to the banishment at the plea hearing.
¶ 5. The transcript of the plea hearing shows that the prosecution requested banishment to assist Carroll in his rehabilitation, and Carroll joined in that request. Specifically, the goal was to help Carroll avoid persons and places of disrepute or criminal activity. When asked whether he understood the implications of the banishment provision, Carroll stated that he did:
Q. [A]nd, finally they’re asking the Court to order that in order to assist you in your rehabilitation and avoid persons and places of disrepute or criminal activity that upon your release from the penitentiary you reside outside of the Third Circuit Court District. That means, Benton, Tippah, Marshall, Lafayette, Union, Calhoun and Chickasaw Counties.
You understand the recommendation that’s going to be made in this case by the District Attorney’s office as to sentencing?
A. Yes, sir.
Q. All right.
Q. The Court is going to accept the recommendation if I accept your plea of guilty, and that’s the sentence I am going to impose. You need to understand the implications of the sentence because with eleven years suspended, when you get out of the penitentiary if you violate your probation, you could get those eleven years; do you understand that?
A: Yes, sir.
Q: Okay. The part about remaining outside of the Third Judicial District, the Third Circuit Court District that I just talked about with you a minute ago, is that a condition of your release and probation that you are prepared to accept and live with?
A: Yes, sir.
*474 (Emphasis added). After accepting Carroll’s guilty plea, the judge stated the following to Carroll:
Finally, based on your stated desire and agreement to leave the Third Judicial District, this Court is going to include in this order that you will, as an additional effort at rehabilitation upon your release from the penitentiary that you will refrain from residing in or traveling through the Third Circuit Court District and that you will, of course, avoid persons and places of disrepute both in the Third Circuit Court District and elsewhere ....
DISCUSSION
¶ 6. Mississippi Code Annotated section 99-89-21(1) (Rev.2007) states the following:
Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred....
Additionally, Carroll pled guilty, so pursuant to Mississippi Code Annotated section 99-39-5(2) (Supp.2012), he had three years from the entry of the judgment of his conviction to file a PCR motion. We must therefore determine whether an exception to these procedural bars applies. Bell v. State, 95 So.3d 760, 763 (¶ 10) (Miss.Ct.App.2012).
¶ 7. “[Ejrrors affecting fundamental constitutional rights are excepted from the procedural bars of the [Uniform Post-Conviction Collateral Relief Act].” Id. at (¶ 12) (citation omitted). Since Carroll’s sentencing, the constitutional requirements of banishment have been clarified by our highest court, notably in a five-justice concurrence by Justice Graves in Means v. State, 43 So.3d 438, 447 (¶ 33) (Miss.2010). The concurrence outlined an affirmative obligation of the trial court to hold a hearing and make mandatory, on-the-record, findings.
1. Banishment
¶ 8. The history of banishment, its current status, and particularly the mandatory requirements imposed on Mississippi trial judges were the subject of a recent law-journal article by Judge Maxwell, entitled And Stay Out! A Look at Judicial Banishment in Mississippi, 82 Miss. L.J. 1 (2012). The most recent case cited in that article, Means v. State, is authoritative. Means recognizes first that banishment fits within the constitutional exception to the procedural bar. Means, 43 So.3d at 442 (¶ 11). Carroll’s assigned error is, therefore, squarely before the Court.
¶ 9. Under Means, banishment remains an allowable condition of post-release supervision — provided the reason or reasons for its imposition are -within acceptable parameters and made the subject of an on-the-record analysis. The Supreme Court of Mississippi “reaffirm[ed] the duty” announced in Mackey v. State, 37 So.3d 1161, 1167 (¶ 23) (Miss.2010), to apply the “Cobb factors”[1] and added that although earlier decisions “did not necessarily place an affirmative duty on the trial judge to articulate the Cobb factors on the record,” such is now mandatory. Means, 43 So.3d at 444 (¶ 20). It reversed and *475 remanded for a hearing to give the trial judge the opportunity to “pass on the propriety of Means’s banishment order.” Id. at 447 (¶ 29).
¶ 10. In Cobb, our supreme court outlined four factors to be considered and applied for properly banishing a person convicted of a crime. As clarified in Means the trial court must find, on the record and with analysis of each factor, that: (1) the banishment provision bears a reasonable relationship to the purpose of probation; (2) the ends of justice and the best interest of the defendant and the public would be served by the banishment; (3) public policy is not violated and the rehabilitative purpose of probation is not defeated by the banishment; and (4) the defendant’s rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution are not violated by the imposition of the banishment. Means, 43 So.3d at 442 (¶ 13) (citation omitted).
¶ 11. This Court has actually required on-the-record findings since 2000, four years before Carroll’s sentencing, when we unanimously said: “In order for banishment to be an appropriate form of punishment[,] an on the record analysis of the Cobb factors is required.” Hamm v. State, 758 So.2d 1042, 1047 (¶ 15) (Miss.Ct.App.2000). This specific requirement was later enunciated with “read my lips” clarity by the supreme court in Mackey and Means when it not only adopted and mandated this on-the-record-finding approach, but went one step further and retroactively applied these requirements in both cases. See Means, 43 So.3d at 444 (¶ 21) (noting the Court of Appeals’ prior recognition of this affirmative duty and adopting and retroactively applying an on-the-ree-ord-finding approach to reverse a banishment condition).
¶ 12. So while the dissent is technically correct that the supreme court “only recently” mandated factual findings, the pertinent and dispositive fact it overlooks is that our high court applied the requirements retroactively in Mackey, then a few months later reaffirmed that approach in Means—reversing both cases, which were PCR challenges like Carroll’s. Thus, we cannot jettison retroactive application of this approach in today’s case, particularly since Carroll’s challenge is to a post-Hamm and post-Weaver 2004 sentence, and his PCR motion was filed after both Mackey and Means had already been decided.
¶ 13. The record in Carroll’s case is simply insufficient to determine whether the trial court made the required findings. Carroll designated all pertinent transcripts in his “Designation of Record on Appeal.” However, the record only includes two pages of the transcript from the plea hearing and does not include a transcript from the sentencing hearing. In those pages, the trial court only alluded to the Cobb factors without making an on-the-record analysis. In Means, under similar circumstances, the supreme court was “simply unable to determine from the record before [it] whether the sentencing judge examined, on the record, any specific facts or circumstances of Means’s case relevant to the Cobb factors to support the banishment.” Means, 43 So.3d at 446 (¶ 28). The court also noted that while “Means is responsible for designating the record pursuant to Mississippi Rule of Appellate Procedure 10(b) in a manner sufficient to allow this Court to review his asserted issues[,] ... it is the absence itself of record support for Means’s banishment which requires additional review.” Means, 43 So.3d at 446 (¶¶ 28-29).
¶ 14. It has been suggested that the fact that the banishment was part of the plea agreement prevents this Court from *476 reversing and remanding this ease. On the contrary, our supreme court in Means reversed and remanded the trial court’s decision despite the fact that Means’s sentence was a result of a negotiated plea agreement. Id. at (¶ 29). See also Mackey v. State, 37 So.3d 1193, 1195 (¶ 8) (Miss.Ct.App.2009) (reversed and rendered by the supreme court in Mackey, 37 So.3d at 1167 (¶ 24), notwithstanding the fact that Mackey “eagerly” accepted banishment as a condition of his suspended sentence). Carroll’s sentence, like Means’s sentence and Mackey’s sentence, was the result of a negotiated plea agreement. In Means, the supreme court explained:
This Court only recently imposed an affirmative duty on the trial judge to analyze the Cobb factors on the record before banishing the defendant. See Mackey, 37 So.3d at 1166-67. So there may be, in fact, some reasons for and benefits of Means’s banishment under Cobb and McCreary, but they do not appear in the scant PCR record before us. And since no hearing was held on Means’s present PCR motion, the trial court has not had an opportunity, in this PCR proceeding, to pass on the propriety of Means’s banishment under Cobb and McCreary. That court should be given the opportunity before this Court rules on it.
Means, 43 So.3d at 447 (¶ 29).
¶ 15. Therefore, we must remand this case so that the trial court may determine, from the complete record of Carroll’s plea and sentencing, whether the standard set by Cobb has been met.
2. Ineffective Assistance of Counsel
¶ 16. Carroll also argues his counsel was ineffective. “The Mississippi Supreme Court has consistently held that the time bar of Mississippi Code Annotated section 99-39-5(2) applies to ... post-conviction relief claims based on ineffective assistance of counsel.” Chancy v. State, 938 So.2d 267, 270 (¶ 11) (Miss.Ct.App.2005). This Court has held:
[ W]hile it is conceivable that under the facts of a particular case, this Court might find that a lawyer’s performance was so deficient, and so prejudicial to the defendant that the defendant’s fundamental constitutional rights were violated. However, [we have] never held that merely raising a claim of ineffective assistance of counsel is sufficient to surmount the procedural bar.
McBride v. State, 914 So.2d 260, 264 (¶ 12) (Miss.Ct.App.2005) (citation omitted).
¶ 17. In order to prevail on a claim of ineffective assistance of counsel, “a defendant must prove that his counsel’s performance was deficient, and that the deficiency prejudiced his defense.” Thomas v. State, 933 So.2d 995, 997 (¶ 6) (Miss.Ct.App.2006) (citing Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). “[I]n order to satisfy the second prong, [Carroll] was required to show that but for his counsel’s error(s): he would not have pleaded guilty; he would have instead insisted on going to trial; and the ultimate outcome would have been different.” Henderson v. State, 89 So.3d 598, 602 (¶ 15) (Miss.Ct.App.2011).
¶ 18. Carroll has provided nothing in support of his assertions on this issue. A defendant is obligated to provide “more than conclusory allegations on a claim of ineffective assistance of counsel.” Carpenter v. State, 899 So.2d 916, 921 (¶ 23) (Miss.Ct.App.2005). Accordingly, this issue is without merit.
CONCLUSION
¶ 19. This Court concludes, as the Supreme Court of Mississippi did in Means, that:
*477 [Carroll]’s PCR motions should have been excepted from the procedural bars, and the trial court erred in its dismissal. Therefore, we must remand this case to the trial court to review the record as it existed at the time of [Carroll]’s sentencing to determine, on the record as required in Means, if it contains the requisite reasons for and benefits of [Carrollj’s banishment under Cobb and McCreary. ...
See Means, 43 So.3d at 447 (¶ 29). Further:
If the record as previously made — which may include the transcript of [Carroll’s] plea and/or sentencing proceedings — reveals that no such reasons exist, or that the sentencing judge did not address the Cobb considerations as they relate to [Carroll], then [Carroll’s] banishment violated his due-process rights, and the revocation of the suspension of [Carroll’s] sentence (for violating the banishment) was unlawful. If, upon review of the record, the trial court reaches this conclusion, the trial court shall vacate the revocation and reinstate the original, suspended sentence with all the conditions except the banishment.
Id. at 447 (¶ 30).
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF TIPPAH COUNTY DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TIPPAH COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.

. Cobb v. State, 437 So.2d 1218, 1220-21 (Miss.1983); see also McCreary v. State, 582 So.2d 425, 427 (Miss.1991); Hamm v. State, 758 So.2d 1042, 1046-47 (¶¶ 12-15) (Miss.Ct.App.2000); Weaver v. State, 764 So.2d 479, 480-81 (¶¶ 6-8) (Miss.Ct.App.2000).